IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL MACHADO ALVAREZ, | |
| Petitioner, | No. CIV S-97-1895 GEB KJM |
| vs. | DEATH PENALTY CASE |
| ROBERT L. AYERS, JR.,<br>Acting Warden of San Quentin<br>State Prison, | |
| Respondent. | ORDER |
| _____/ | |

On May 24, 2006, the undersigned heard argument on petitioner's April 3, 2006 Motion to File Second Amended Petition. Because the parties' briefing and argument did not address all the issues, additional briefing was ordered on June 16, 2006. The supplemental briefs have been submitted. Two issues have been resolved. One remains. First, based on recent Supreme Court authority permitting consideration of a challenge to the lethal injection protocol in an action under 42 U.S.C. § 1983, petitioner withdrew claim DDD of the proposed second amended petition. June 16, 2006 Not. of Withdrawal of Claim DDD. Second, respondent states he does not object to stay and abeyance of this action pending the filing and resolution of petitioner's exhaustion petition in state court. August 14, 2006 Resp. to Pet'r's Mot. for Stay and Abey.

The remaining issue to be resolved with respect to petitioner's motion to amend is the exhaustion status of the amended claims. Respondent identifies twelve claims as unexhausted. Petitioner admits that claims FF, II, JJ and RR are not exhausted. He disputes respondent's categorization of the eight remaining claims: LL, OO, PP, QQ, SS, TT, UU and ZZ. Each is discussed below.[1]

## LEGAL STANDARDS

The exhaustion of available state remedies is a prerequisite to a federal court's consideration of claims sought to be presented in habeas corpus proceedings. See Rose v. Lundy, 455 U.S. 509 (1982); Carothers v. Rhay, 594 F.2d 225 (9th Cir. 1979); 28 U.S.C. § 2254(b). The exhaustion doctrine is based on a policy of federal and state comity, designed to give state courts the initial opportunity to correct alleged constitutional deprivations. See Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement by providing the highest state court with an opportunity to rule on the merits of the claim. Batchelor v. Cupp, 693 F.2d 859, 862 (9th Cir. 1982) (citations omitted).

The state court has an opportunity to rule on the merits when the petitioner fairly presents the claim to that court. The fair presentation requirement is met where the petitioner has described the operative facts and legal theory on which his claim is based. Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003). The state claim need not be identical to the federal claim. Picard, 404 U.S. at 277-78. Exhaustion requires only that the substance of the federal claim be fairly presented. Id. at 278.

A federal court claim may require exhaustion because it contains either legal arguments or factual allegations not raised in the state court. If the petitioner did not fairly

---

[1] In the June 16, 2006 order, the undersigned resolved respondent's global arguments in opposition to the motion to amend. The court found petitioner did not delay unduly in making this motion. June 16, 2006 Order at 3-7. In addition, because stay and abeyance is appropriate, respondent's argument that exhaustion would be futile, and therefore amendment unnecessary, is no longer applicable. Id. at 7-8.

present the legal basis for the claim to the state court, it is unexhausted.  Generally, it is "not enough that all the facts necessary to support the federal claim were before the state courts . . . or that a somewhat similar state-law claim was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982); Duncan v. Henry, 513 U.S. 364, 366 (1995).

        A claim also is unexhausted if it contains new factual allegations that "fundamentally alter the legal claim already considered by the state courts."  Vasquez v. Hillery, 474 U.S. 254, 257-58 (1986).  New factual allegations that "simply provide[] additional evidentiary support for the claim" do not transform the claim and thus do not require exhaustion. Landrigan v. Schriro, 441 F.3d 638, 648 (9th Cir.) (en banc) (new evidentiary support for prejudice prong of Strickland does not render claim unexhausted), cert. granted, 127 S. Ct. 35 (2006); Chacon v. Wood, 36 F.3d 1459, 1468 (9th Cir. 1994), superseded by statute on other grounds as recognized by Morris v. Woodford, 229 F.3d 775, 779 (9th Cir. 2000).  Respondent contends that any new factual evidence that might "make a difference to this Court's consideration of his federal claim," renders that claim unexhausted.[2]  Respondent misconstrues the purpose of exhaustion.  The state court must have been given a fair opportunity to rule on petitioner's claims.  That does not mean the claim presented to the state court must in every respect be the same as the claim presented in federal court.  Correll v. Stewart, 137 F.3d 1404, 1414 (9th Cir. 1998) ("'claim exhaustion' does not equate to 'evidence exhaustion'").  Were that the case, many aspects of federal habeas law would be null.  The federal statute and rules clearly contemplate the possibility of new factual development in federal court.  See 28 U.S.C. § 2254(e) (evidentiary hearings); Rule 6, Rules Governing § 2254 Cases (discovery).  Further, this court recognizes that requiring a petitioner to present every factual basis for his claim in state court

---

[2] In his reply brief, respondent also argues that: "Any factual allegations presented for the first time in federal court are necessarily irrelevant to the ultimate question a federal court must consider: the reasonableness of the state court's adjudication of the claims before that court." Aug. 14, 2006 Reply to Pet'r's Resp. re Exhaustion.  The current issue is exhaustion, not the merits of petitioner's claims.  The court will consider respondent's argument during the appropriate phase of this case.

ignores the reality that state court procedures do not always permit full factfinding.  If the petitioner presented the legal basis for the claim but was unable to make a substantial factual showing because state court procedures did not permit factfinding, then the state court has had a sufficient opportunity to rule on the merits of the claim and the exhaustion requirement should be satisfied.  See Weaver v. Thompson, 197 F.3d 359, 364-65 (9th Cir. 1999); Miller v. Estelle, 677 F.2d 1080, 1084 n.9 (5th Cir. 1982).

The fair opportunity issue is particularly relevant in this case.  As described in the court's June 16, 2006 order, counsel appointed by the state to file a habeas corpus petition abdicated his duties to petitioner.  June 16, 2006 Order at 5.  Federal habeas counsel was required to step in to file a state habeas petition to protect petitioner's rights.  Id.  The California Supreme Court denied that 124-page habeas petition just over a month after it was filed.  In re Alvarez, No. S073670 (Cal. Sup. Ct. Oct. 28, 1998).  The docket for the case shows that the state supreme court did so without considering any filings from the state or issuing any other orders.  At the time of petitioner's state habeas proceeding, California court rules required the issuance of an order to show cause before a petitioner was permitted to conduct discovery.  People v. Gonzales, 51 Cal. 3d 1179, 1258 (1990) (a habeas petition that does not state a prima facie case for relief "must be summarily denied, and it creates no cause or proceeding which would confer discovery jurisdiction."), superseded by statute as stated in In re Steele, 32 Cal. 4th 682, 690 (2004) (Gonzales superseded by statute effective Jan. 1, 2003).  It is clear, then, that petitioner had no chance to conduct discovery or present evidence during his state habeas proceeding.

## ANALYSIS

I. Claim LL - Shackling

Petitioner raised this claim that he was visibly shackled, without sufficient cause, in both his state appeal and habeas petitions.  On state habeas he argued he was shackled to his chair by a waist chain and his hands were manacled.  He contended the waist chains "were fully visible to the jurors every time he moved" and that "[s]everal jurors saw the shackles and were

influenced thereby to regard Mr. Alvarez as dangerous." 1998 State Habeas Pet. at 89, 93.[3] These state court allegations were not substantiated by declarations or other evidence. With his amended federal petition, petitioner presents the declarations of trial counsel and jurors who state they saw petitioner's shackles. Exs. 63, 13-16 to Pet'r's Nov. 9, 2004 Mot. for Evid. Hr'g. Respondent argues that this first evidentiary substantiation of petitioner's shackling claim renders it unexhausted.

Petitioner's submissions do not "fundamentally alter" his shackling claim. In fact, they do not change it at all. Petitioner's new submissions are far less significant than those made in federal court by the petitioner in Landrigan, supra. In Landrigan, the petitioner proffered additional facts "such as expert testimony regarding Landrigan's organic brain dysfunction," to support his federal court claim of ineffective assistance of counsel for failure to investigate and present mitigating evidence at the penalty phase. 441 F.3d at 648. It does not appear petitioner Landrigan presented any similar evidence in the state court, or even that he specifically made allegations summarizing that evidence. In state court, "Landrigan made a general claim that his counsel had failed to investigate and develop potential mitigating evidence, including his biological mother's use of drugs and alcohol during gestation, his adoptive mother's alcoholism and its adverse effect on Landrigan's upbringing, and information regarding his biological father and his family history of violence. " Id. at 642-43. Landrigan sought appointment of an expert regarding the effects of maternal substance abuse on a developing fetus and requested an evidentiary hearing. Id. at 643. Both requests were denied. Id. The Ninth Circuit Court of Appeals held the new evidence did not "fundamentally alter the ineffective assistance claim presented to the state court. It simply provide[d] additional evidentiary support for the claim." Id.; see also Morris v. Dretke, 413 F.3d 484 (5th Cir. 2005) (new expert declarations, including

/////

---

[3] The state court record, including copies of documents from the appellate and state habeas proceedings, were lodged here on October 8, 1998.

determination of the petitioner's IQ for the first time, do not fundamentally change Atkins claim raised in state court).

In the present case, petitioner's evidentiary submissions simply substantiate, without changing, the factual allegations made in the state court petition. See Belmontes v. Brown, 414 F.3d 1094, 1118 (9th Cir. 2005) ("although additional facts add some evidentiary support to the claim, they do not 'fundamentally alter' it"), rev'd on other grounds, ___ U.S. ___, 127 S. Ct. 469 (Nov. 13, 2006). "The essential factual and legal theories are the same as those presented to the California court." Id.. Amended claim LL is exhausted.

II. Claims OO and SS - Use of Interpreter

Claim OO alleges counsel were ineffective for failing to use an interpreter when they communicated with petitioner. Claim SS alleges the interpreter provided during court proceedings was not competent. In state court, petitioner alleged that his counsel's failure, due to the lack of an interpreter, to inform him of the legal procedures and the consequences of his testimony caused him to agree to testify and to unnecessarily incriminate himself. 1998 State Habeas Pet. at 99-100. Petitioner also argued in state court that interpreter Carmen Krewson was inadequate because she spoke a Mexican dialect of Spanish and petitioner speaks a Cuban dialect. Id. at 107-109. As a result, Ms. Krewson was unable to understand and translate petitioner's testimony adequately and petitioner was not always able to understand Ms. Krewson. Id. The state habeas petition contains several other allegations regarding Ms. Krewson, including allegations that her difficulty translating was exacerbated by the fact that she was terminally ill and taking large amounts of medication, and an argument that she did not understand her role as a member of the defense team. Id. The state habeas petition also describes Ms. Yolanda Oliver (now Yolanda Riley-Portal), who was originally assigned to interpret for petitioner.[4] Id. at 107.

---

[4] The parties should be aware that Ms. Riley-Portal is now an employee of this court. She has provided translation services for the undersigned. At this time, because Ms. Riley-Portal's credibility is not at issue, the undersigned does not find any basis for recusal under 28 U.S.C. § 455.

It states that Ms. Oliver, a Spaniard, and petitioner could easily understand one another's dialects. Id. Ms. Oliver was removed as petitioner's interpreter after the judge "received extra-judicial information that Mr. Alvarez may attempt to involve her in an escape plot." Id.

In the proposed second amended petition here, petitioner makes the same basic factual allegations. However, he includes detailed declarations from a number of people. First, Ms. Riley-Portal makes a number of points important to petitioner's argument:

1. She states her opinion of petitioner's English abilities: "he appeared to me unable to properly communicate complex questions or comments in English." Dec. 10, 2003 Decl. of Yolanda Riley-Portal, Ex. 17 to Pet'r's Nov. 9, 2004 Mot. for Evid. Hr'g, at 3.

2. She felt that while counsel thought petitioner did not need an interpreter, "it was clear to me that he did need one." Id. at 2.

3. The judge restricted her communications with petitioner. She argued that she "felt that Mr. Alvarez was receiving unfair treatment by having his communications with counsel restricted." Id. at 3.

4. The judge told her he was removing her from the case because jail officers found an escape plan in petitioner's cell and they thought petitioner was going to take her hostage. However, the head of the interpreters' office told her she had been removed because the judge felt she was "too young and inexperienced." Id. at 4-5.

5. Ms. Krewson told Ms. Riley-Portal that she was going to "flee to Florida" for "three to six months" to avoid having to testify about confidential attorney/client information provided to the judge regarding an investigatory trip to Cuba. Id. at 6.

Second, Leslie Colyer, with whom petitioner was living at the time of the crime, states that petitioner's English was "horrible" and that petitioner told her during trial he could not

7

understand the interpreter and "was always upset about this because he could barely understand what was happening to him every day in court." Oct. 24, 2003 Decl. of Leslie Colyer, Ex. 18 to Pet'r's Nov. 9, 2004 Mot. for Evid. Hr'g, at 1-2. In 2003, Dr. Roseann Dueñas González, an English professor, evaluated petitioner's current and past English language proficiency. Petitioner submits Dr. Dueñas González's report for the first time in federal court. Feb. 19, 2004 Report of Roseann Dueñas González, Ph.D., Ex. 19 to Pet'r's Nov. 9, 2004 Mot. for Evid. Hr'g. Dr. Dueñas González determined that, at the time of trial, petitioner possessed "extremely limited speaking ability" and "very limited ability to comprehend spoken English." Id. at 16. She concluded:

> Mr. Alvarez <u>did not have</u> the requisite English comprehension and production proficiency or the required vocabulary, grammatical, or phonological control to comprehend the questions posed to him during the trial or to fully and coherently explain the facts and circumstances pertinent to his case. Mr. Alvarez' limited English, in my opinion, barred him from being "linguistically present" during his trial testimony and to authentically express his knowledge about his case in order to meaningfully participate in his own trial, to confront witnesses, and to explain with detail and nuances his knowledge of the events.

Id. at 34 (emphasis in original). Finally, Jennifer Corey, one of petitioner's attorneys in this federal habeas proceeding, submitted a declaration. July 9, 2004 Decl. of Jennifer M. Corey, Ex. 20 to Pet'r's Nov. 9, 2004 Mot. for Evid. Hr'g. Ms. Corey was assigned to the case in 2002. Id. at 1. She avers she and petitioner have had difficulty understanding each other when trying to communicate in English. Id. at 1-2.

Respondent relies on Aiken v. Spalding, 841 F.2d 881 (9th Cir. 1988). In Aiken, however, the petitioner "brought his federal habeas petition without having petitioned the state court for habeas relief." 841 F.2d at 883. Here, the state court was given the opportunity to permit further factual development but declined to do so. By dismissing petitioner's state petition without issuing an order to show cause, the California Supreme Court refused to permit the case to proceed to a fact-finding stage. Exhaustion requires the state court be given an

opportunity to act first on the federal claims.  See Vasquez v. Hillery, 474 U.S. 254, 257 (1986); Rose v. Lundy, 455 U.S. 509, 514 (1982).  Petitioner gave the California Supreme Court that opportunity.  His new factual allegations do not "fundamentally alter" the factual and legal bases for the claims summarily dismissed by the state court.  The claims are exhausted.

III.   Claim PP and QQ - Right to Investigate and Present Mental Health and Other Mitigation

The basis for these claims is the superior court's withholding of disbursement funds for an investigatory trip to Cuba.  The background facts are set out in the Second Amended Petition as follows.  In January 1989, defense counsel met with Judge Bond for an in camera hearing on the defense application for funds for a trip to Cuba to investigate potential mitigation.[5]  Petitioner is a Cuban national who did not come to the United States until 1980 when he was twenty years old and counsel felt it necessary to investigate petitioner's background and family.  Judge Bond authorized $9,726 but only for a trip after trial started.  In June 1989, the defense requested a continuance of the penalty phase.  Apparently the first trip to Cuba was not successful due to trouble in obtaining visas.  In addition, the defense's arrangements for a second trip had been again obstructed by the Cuban government.  Judge Lewis, the trial judge, agreed to a continuance until July 10, 1989.

On July 5, defense counsel reported to Judge Lewis that Gail McGarrity, a cultural anthropologist, would be going to Cuba on July 10.  The defense explained that neither Ms. McGarrity nor Dr. Vicary, a psychiatrist whose testimony counsel intended to propound during the penalty phase, could properly prepare their evaluations of petitioner without information regarding his childhood and family that could only be obtained through the trip to Cuba.

Sometime between July 5 and July 10, a problem arose.  According to petitioner, petitioner's then-interpreter, Carmen Krewson, became incensed when she learned that another interpreter, Patricia Santivanias, was planning to accompany Ms. McGarrity to Cuba.  Ms.

---

[5] California law required such funding requests to be heard by a judge other than the trial judge.

9

Krewson complained to Gladys Cook, the head of the interpreter's office at the court. Ms. Cook then contacted the prosecutor, the trial judge and the media to inform them of what she believed to be a misuse of court-approved funds to provide Ms. Santavanias with a vacation in Mexico. (Ms. McGarrity planned to enter Cuba by way of Mexico City.) After hearing from Ms. Cook, Judge Lewis called Judge Bond. Judge Bond called defense counsel to appear the next day. When they appeared, Judge Bond expressed anger about the personnel going on the trip and the use of the subterfuge of being tourists to enter Cuba. She then withdrew the previously-approved funds.

On July 11, the defense filed motions for recusal of the interpreter's office, for a new trial, and to hold an evidentiary hearing concerning the disclosure of the confidential information. Judge Lewis permitted a hearing at which he and the prosecutor discussed what Gladys Cook had told them, and Judge Lewis described his conversation with Judge Bond. The only person to testify under oath was Gladys Cook. Thereafter, Judge Lewis denied petitioner's motions and the penalty phase resumed.

Gail McGarrity was able to reach some of petitioner's family members by phone the night before her testimony. Among other things, she testified that petitioner had suffered some head injuries in Cuba, followed by the development of a seizure disorder.

Claim PP is that counsel was ineffective for failing to request a continuance after Ms. McGarrity spoke with family members. According to petitioner, the information garnered from family members would have been important to a mental health expert. Petitioner also complains in claim PP that counsel was ineffective for waiting until the last minute to pursue the mitigation investigation into petitioner's childhood. In claim QQ, petitioner argues that a mental health defense may have been viable at the guilt phase had Judge Bond not prohibited counsel in her initial order from using the money authorized at that time until after trial commenced. To the extent Judge Bond's restriction was due to counsel's failure to inform her of the need for money at the guilt phase, petitioner alleges ineffective assistance of counsel.

         Respondent argues these claims are unexhausted because petitioner has substantially changed his argument that he suffered prejudice as a result of trial counsel's and the trial court's actions. In state court, petitioner discussed the hearsay evidence deduced at the penalty phase: petitioner suffered head injuries as a child, he was beaten unconscious by a stepmother, he was passive when taunted or tormented by other, smaller or younger children, and, in his brother's opinion, it seemed as though petitioner felt he deserved to be beaten.  1998 State Habeas Pet. at 101.  In federal court, petitioner adds the declaration of a medical doctor that petitioner suffers from post-traumatic stress disorder and mental disabilities.  He provides greater details of his extensive head injuries, emotional trauma and problems, developmental problems, abuse, humiliation, difficulty in school, and extensive abuse in Cuban and American detention camps.

         Again, petitioner is doing nothing more than providing specific evidentiary support for the factual allegations he made in state court.  As petitioner points out, this situation is very much like that confronted by the court in <u>Landrigan</u>.  As described above in the discussion of claim LL, the Court of Appeals in <u>Landrigan</u> held that expert testimony regarding Landrigan's organic brain dysfunction did not fundamentally alter a state claim that counsel was constitutionally ineffective for failing "to undertake a reasonable investigation of mitigating factors, including information that could have been derived from Landrigan's biological father and his adoptive sister." 441 F.3d at 648.  The expert opinion provided in the instant case was contemplated in the state petition: "Had these statements (of petitioner's family members) been provided to a mental health expert, it is possible that, under the circumstances of this case, the expert may well have been willing and able to make at least some diagnosis and evaluation." 1998 State Habeas Pet. at 101.  As did the state court in <u>Landrigan</u>, the state court here had a fair opportunity to consider this claim and accept additional evidence.  <u>See also</u> <u>Vasquez</u>, 474 U.S. at 259 (new expert analysis does not fundamentally change claim that grand jury systematically

/////

1  excluded Blacks); <u>Morris v. Dretke</u>, 413 F.3d 484 (5th Cir. 2005).  Claims PP and QQ are
2  exhausted.
3  IV.  <u>Claim TT - Abuse and Harassment at Jail</u>
4    Claim TT is that petitioner was deprived of his rights to be present in court, assist
5  in his defense and confront witnesses, because he was exhausted by the abuse and harassment he
6  suffered from guards at the Sacramento County Jail.  In state court, petitioner made the same
7  arguments.  He noted the numerous times he had informed the trial court about his problems at
8  the jail.  He stated "[a]t least three jail inmates were prepared to testify concerning the abuse they
9  witnessed, and the fact that Mr. Alvarez had done nothing to provoke the abuse."  1998 State
10 Habeas Pet. at 110.  The state petition described the abuse petitioner suffered as: refusing to
11 permit petitioner to shower or shave before appearing in court, awakening petitioner repeatedly
12 in the middle of the night and forcing him to move, subjecting petitioner to extreme verbal and
13 physical abuse, injuring petitioner's shoulder and hand, and awakening petitioner at 5:00 a.m. for
14 court.
15   In federal court, petitioner presents declarations of inmate witnesses who state
16 they observed abuse and harassment of petitioner at the jail.  Again, the state court declined the
17 opportunity to consider additional evidence.  The declarations do not fundamentally alter this
18 claim of petitioner's.  It is exhausted.
19 V.  <u>Claim UU - Investigation into Petitioner's Confinement at Fort Chafee and Quivican Prison</u>
20   In his state court petition, petitioner pointed to penalty phase expert testimony
21 regarding the plight of the Mariel boatlift Cubans.  Petitioner alleged that counsel failed to
22 personalize petitioner's experience at the Fort McCoy and Fort Chafee relocation camps.  The
23 expert testified only to general conditions.  Petitioner stated that at an evidentiary hearing, after
24 discovery and additional investigation, he would present testimony regarding his personal
25 experiences, including the abuse he suffered, at the relocation camps.  1998 State Habeas Pet. at
26 112-114.

Before this court, petitioner presents a good deal of evidence regarding the treatment of prisoners at Fort McCoy and specific evidence of abuse petitioner suffered at Fort Chafee. Much of this evidence was adduced through discovery, a procedure unavailable to petitioner in his state habeas proceeding. Further, contrary to respondent's assertion, petitioner did raise the issue of Fort McCoy in state court. See 1998 State Pet. at 112, 114. He did not, however, mention the failure to investigate petitioner's incarceration in Cuba in Quivican Prison. This failure is mentioned here, briefly, in amended claim UU. Second Am. Pet. at 396. Because the state court claim focused solely on petitioner's treatment in the relocation camps, the addition of incarceration in Cuba does alter the factual basis of the claim. Claim UU is exhausted in all respects except with regard to the allegations concerning Quivican Prison.

VI. <u>Claim ZZ - Expert Advice on Substance Abuse</u>

Petitioner claims here that counsel was ineffective for failing to consult with an expert on the effects of petitioner's drug use. According to petitioner, there was undisputed evidence of petitioner's use of crack cocaine, alcohol and other drugs in the days prior to the killing of Mr. Birkman. Petitioner claims a mental health evaluation should have included analysis of his substance abuse for purposes of both a guilt phase defense and penalty phase mitigation.

In state court, petitioner stated he would support this claim at an evidentiary hearing with evidence "including a psychopharmacological evaluation proving the deleterious effects, in combination with his head injuries, history of abuse, etc., of the drugs on his actions." 1998 State Habeas Pet. at 117-18. Here in federal court, petitioner supports his claim with the declaration of a medical doctor who evaluated petitioner. The doctor found petitioner's consumption of drugs and alcohol before the crimes, in combination with his brain injuries, "severely impaired his functioning at the time of the crimes." Nov. 7, 2004 Decl. of Pablo Stewart, M.D., Ex. 64 to Pet'r's Nov. 9, 2004 Mot. for Evid. Hr'g, at 24-25. Like the addition of
/////

expert analysis in several of the claims discussed above, the expert analysis here does not fundamentally alter the claim raised in state court.

### STAY AND ABEYANCE

As described in the June 16, 2006 Order, upon a showing of good cause, a federal court may stay the proceedings on a mixed petition and hold the case in abeyance pending exhaustion in state court. Rhines v. Weber, 544 U.S. 269, 278 (2005). Given the unique circumstances in this case, outlined in the June 16 Order, respondent does not oppose stay and abeyance. For those reasons, the undersigned finds good cause as well. However, respondent asks that petitioner be restricted to raising only the unexhausted claims in state court. In addition, respondent asks the court to set a time limit on petitioner's filing in state court and on his return to this court.

With respect to the form of petitioner's exhaustion petition, those questions are for the state court, not this one.[6] Petitioner will be directed to notify the court when the California Supreme Court resolves the exhaustion petition.

Accordingly, as set out above and in the court's June 16, 2006 order, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Petitioner's April 3, 2006 Motion to File the Second Amended Petition is granted.

2. The parties agree and the undersigned finds the following claims in the Second Amended Petition are not exhausted fully: FF, II, JJ, and RR. In addition, the undersigned finds the allegations concerning Quivican Prison in claim UU are not exhausted.

3. Good cause appearing, and without opposition from respondent, petitioner's request for stay and abeyance of this proceeding pending the

---

[6] Petitioner submitted a notice that he filed a state exhaustion petition on September 1, 2006. Pet'r's Sept. 14, 2006 Notice of Lodging.

California Supreme Court's resolution of his exhaustion petition is granted.   Petitioner shall notify this court within ten days of the California Supreme Court's resolution of petitioner's pending state petition.

DATED:  December 6, 2006.

_____
U.S. MAGISTRATE JUDGE

alvarezamend.or2